UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 Global Capital LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |
| _____/ | |
| 1 Global Capital LLC, | Adv. Case No. |
| Plaintiff, | |
| v. | |
| Jetset Express Inc. and Vladimir Djurkovic, | |
| Defendants. | |
| _____/ | |

**COMPLAINT FOR BREACH OF CONTRACT AND GUARANTY**

Plaintiff 1 Global Capital LLC, sues Vladimir Djurkovic, ("Guarantor") and Jetset Express Inc., ("Merchant") (together, "Defendants") and alleges as follows:

**JURISDICTION, VENUE AND PARTIES**

1. Plaintiff is a Limited Liability Company with its principal place of business in Broward County, Florida.

2. Merchant is an Illinois Corporation.

---

[1] The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 1 Global Capital LLC, d/b/a 1 GC Collections, 1250 E. Hallandale Beach Blvd., Suite 605, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, d/b/a 1 West Collections, 1250 E. Hallandale Beach Blvd., Suite 605, Hallandale Beach, FL 33009 (1711). On February 19, 2019, the Debtors registered the fictitious names "1 GC Collections" and "1 West Collections" with the Florida Department of State.

1

3. Guarantor is a resident of the state of Illinois.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a non-core proceeding pursuant to 28 U.S.C. § 157(c).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409. Plaintiff consents to the entry of final orders and judgment by the Bankruptcy Court.

6. All conditions precedent to the filing of this action have been performed, excused, or otherwise waived.

## COUNT I

**(Breach of Merchant Agreement against Merchant)**

7. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 6 above as if fully set forth herein.

8. Plaintiff and Defendants are parties to that certain Merchant Agreement, a true and correct copy of which is attached hereto as Exhibit A ("Merchant Agreement").

9. Defendants executed and delivered the Merchant Agreement for the sale of Merchant's future receivables to Plaintiff. In particular, Plaintiff, in exchange for a lump sum payment, would receive over a period of time an agreed amount of the future accounts receivable generated by Merchant ("Specified Amount").

10. Plaintiff transferred to Merchant the lump sum under the Merchant Agreement in good faith and with the reasonable expectation that Merchant would deliver the Specified Amount by making periodic payments in accordance with the terms and conditions of the Merchant Agreement.

11. Merchant breached the Merchant Agreement by failing to make payments to Plaintiff.

2

12. Merchant's failure to pay the Plaintiff the daily payments when due in accordance with the terms of the Merchant Agreement constitutes a default pursuant to terms and conditions of the Merchant Agreement.

13. Accordingly, as a result of Merchant's breach of the Merchant Agreement, Plaintiff sustained damages in the sum of $47,895.79.

WHEREFORE, Plaintiff demands judgment against Merchant for damages in the amount of $47,895.79, together with pre-judgment interest, attorneys' fees, costs, and such other relief that this Court deems just and proper.

## COUNT II

### (Breach of Guaranty against Guarantor)

14. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 6, 8 and 9 above as if fully set forth herein.

15. The Merchant Agreement includes Guarantor's personal guaranty of Merchant's performance of all covenants, representations and warranties made by Defendants in the Merchant Agreement.

16. Guarantor executed and delivered the Merchant Agreement, as endorser and unconditional Guarantor of payment.

17. Plaintiff is the owner and holder of the Merchant Agreement and has performed its obligations and conditions precedent to enforce its terms and conditions.

18. Merchant has not delivered the Specified Amount.

19. Merchant's failure to pay the Plaintiff the Specified Amount when due constitutes a default and breach of the Merchant Agreement.

20. Accordingly, as a result of Merchant's breach, Guarantor owes Plaintiff $47,895.79 as defined therein, less payments, plus attorneys' fees, pre-judgment interest, costs.

WHEREFORE, Plaintiff demands judgment against Guarantor for damages in the amount of $47,895.79 exclusive of attorneys' fees, pre-judgment interest, costs, and such other relief that this Court deems just and proper.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
*Special Litigation Counsel to the Debtors in Possession*
283 Catalonia Avenue, Suite 200
Miami, Florida 33134
Telephone: 305.377.0086
Facsimile: 305.377.0781
By: /s/ Jonathan S. Feldman
Jonathan S. Feldman
Florida Bar No. 12682
jfeldman@pbyalaw.com
Darla Grondin
Florida Bar No. 99421
dgrondin@pbyalaw.com
*Attorneys for Plaintiff*

Ph. (888) 374-3150  | Fax (888) 371-1161

**1 GLOBAL CAPITAL**
FINANCIAL SERVICES

Contract ID#: FG180524069
Sales Partner: GYAM LLC

## MERCHANT AGREEMENT

Agreement dated May 25, 2018 _____ between 1 GLOBAL CAPITAL, LLC ("1GC) and the merchant listed below (the "Merchant").

## MERCHANT INFORMATION

Merchant's Legal Name: Jetset Express, Inc

D/B/A: Jetset Express

State of Incorporation / Organization: Illinois

Type of entity (check one): ☑ Corporation ☐ Limited Liability Company ☐ Limited Partnership ☐ Limited Liability Partnership
☐ Sole Proprietor

Physical Address: 3577 North Milwaukee Ave, Apt 2    City Chicago    State Illinois    Zip 60641

Mailing Address: 3577 North Milwaukee Ave, Apt 2    City Chicago    State Illinois    Zip 60641

E-mail Address: info@jetsetus.com

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to 1GC (making 1GC the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payers (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to 1GC.

The Purchased Amount shall be paid to 1GC by Merchant's irrevocably authorizing only one depositing account acceptable to 1GC (the "Account") to remit the specified daily amount (the "Specified Daily Amount") until such time as 1GC receives payment in full of the Purchased Amount. Merchant hereby authorizes 1GC to ACH Debit the specified remittances from the merchant's bank account on a daily basis and will provide 1GC with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the Specified Daily Amount to be debited by 1GC remains in the account and will be held responsible for any fees incurred by 1GC resulting from a rejected ACH attempt or an event of default. (See Appendix A) 1GC is not responsible for any overdrafts or rejected transactions that may result from 1GC ACH debiting the specified amounts under the terms of this agreement. 1GC will debit the specific daily amount each business day and upon receipt of the merchant's monthly bank statements on or about the eighteenth day of each month reconcile the merchant's account by either crediting or debiting the difference from or back to the merchant's bank account so that the amount debited per month equals the specified percentage. 1GC may, upon Merchant's request, adjust the amount of any payment due under this Agreement at 1GC sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between 1GC and Merchant, upon the violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is contained in Appendix A.

Purchase Price : $ 90,000.00            Specified Percentage : 6 %
Specified Daily Amount : $ 489.29       Receipts Purchased Amount : $ 123,300.00

INITIALS

1 Global Capital as Servicing Agent       1 GLOBAL CAPITAL, LLC | 08-06-2013
                                                   Page 1
11795-005/00426021_1

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH ON PAGE 2, THE "MERCHANT SECURITY AGREEMENT" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

FOR THE MERCHANT #1 **[REQUIRED]**

By: Vladimir Djurkovic , OWNER
(Print name & Title)        (Signature)        Sign Here

FOR THE MERCHANT #2 **[REQUIRED IF CO-OWNERSHIP]**

By: _____
(Print name & Title)        (Signature)        Sign Here

OWNER #1 **[REQUIRED]**

By: Vladimir Djurkovic , OWNER
(Print name & Title)        (Signature)        Sign Here

OWNER #2 **[REQUIRED IF CO-OWNERSHIP]**

By: _____
(Print name & Title)        (Signature)        Sign Here

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said merchant to repay this obligation and that the information provided herein and in all of 1GC documents, forms and recorded interviews are true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and 1GC and 1GC shall be entitled to all remedies available under law. 1GC may produce a monthly statement reflecting the delivery of the daily Receivables from Merchant via a processor of Merchant's Receipts and/or Operator (a "Processor") to 1GC. An investigative or consumer report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes 1GC, its agents and representatives and any credit reporting agency engaged by 1GC, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to 1GC as a consequence of this Agreement or for 1GC's ability to determine Merchant's eligibility to enter into any future agreement with Company.

ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

1 Global Capital LLC- SECURITY AGREEMENT AND GUARANTEE

Merchant's Legal Name: Jetset Express, Inc

D/B/A: Jetset Express

Physical Address: 3577 North Milwaukee Ave, Apt 2    City: Chicago    State: Illinois    Zip: 60641

E-mail Address: info@jetsetus.com    Federal ID #: ▮

1 Global Capital as Servicing Agent    1 GLOBAL CAPITAL, LLC | 08-06-2013    INITIALS
Page 2

11795-005/00426621_1

## SECURITY AGREEMENT

Security Interest. To secure Merchant's payment and performance obligations to 1GC under the Merchant Agreement (the "Factoring Agreement"), Merchant hereby grants to 1GC a security interest in all now owned and hereafter acquired accounts; chattel paper; deposit accounts; contract rights; letter of credit rights; instruments; payment and general intangibles (including but not limited to tax refunds, registered and unregistered patents, trademarks, service marks, copyrights, trade names, trade secrets, customer lists, licenses, documents, certificates of deposit, and all rights of Merchant as a seller of goods, including rights of reclamation, replevin and stoppage in transit); goods; inventory; equipment and fixtures, and all additions, substitutions, replacements (including spare parts), and accessions thereof and thereto; investment property; and all books and records relating to all of the foregoing property, including, without limitation, all computer programs, printed output and computer readable data in the possession or control of the Merchant, any computer service bureau or other third party, and all proceeds of the foregoing (including, but not limited to, all insurance proceeds, all claims against third parties for loss or destruction of or damage to any of the foregoing, and all income from the lease or rental of any of the foregoing), as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC") (collectively, the "Collateral").

Cross-Collateral. To secure Guarantor's payment and performance obligations to 1GC under this Security Agreement and Guaranty (the "Agreement"), Guarantor hereby grants 1GC a security interest in  Vladimir Djurkovic (Jetset Express) (the "Additional Collateral"). Guarantor understands that 1GC will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement. Merchant and Guarantor each acknowledge and agree that any security interest granted to 1GC under any other agreement between Merchant or Guarantor and 1GC (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as 1GC deems necessary to perfect or maintain 1GC's first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes 1GC to file any financing statements deemed necessary by 1GC to perfect or maintain 1GC's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to 1GC with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lien may be tortuously interfering with 1GC's rights. Merchant and Guarantor shall be liable for and 1GC may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by 1GC in protecting, preserving and enforcing 1GC's security interest and rights.

Negative Pledge. Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

Consent to Enter Premises and Assign Lease. 1GC shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, 1GC may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that 1GC may enter into an agreement with Merchant's landlord giving 1GC the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

Remedies. Upon any Event of Default, 1GC may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

## GUARANTY

Personal Guaranty of Performance. The undersigned Guarantor(s) hereby guarantees to 1GC, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) at the time Merchant admits its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts.

Guarantor Waivers. In the event that Merchant fails to make a payment or perform any obligation when due under the Merchant Agreement, 1GC may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral 1GC may hold pursuant to this Agreement or any other guaranty.

1GC does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) 1GC's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to 1GC. In addition, 1GC may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to 1GC; (ii) release Merchant from its obligations to 1GC; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any

collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to 1GC under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation ; (ii) reimbursement; (iii) Performance; (iv) indemnification; or (v) contribution. In the event that 1GC must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/ She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY.

<u>MERCHANT AGREEMENT TERMS AND CONDITIONS</u>

I. <u>TERMS OF ENROLLMENT IN PROGRAM</u>

1.1     **Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to 1GC, with a Bank acceptable to 1GC, to obtain electronic fund transfer services. Merchant shall provide 1GC and/ or it's authorized agent with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts and deposits into the account Merchant shall authorize 1GC and/or it's agent to deduct the amounts owed to 1GC for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to 1GC by permitting 1GC to withdraw the Specified Daily Amount by ACH debiting of the account. The authorization shall be irrevocable without the written consent of 1GC.

1.2     **Term of Agreement.** This Agreement shall expire upon repayment of the Purchased Amount.
Merchant may terminate this Agreement upon ninety days' prior written notice (effective upon receipt) to 1GC. The termination of this Agreement shall not affect Merchant's responsibility to satisfy all outstanding obligations to 1GC at the time of termination.

1.3     **Future Purchases.** 1GC reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

1.4     **Financial Condition.** Merchant and Guarantor(s) authorize 1GC and its agents to investigate their financial responsibility and history, and will provide to 1GC any bank or financial statements, tax returns, etc., as 1GC deems necessary prior to or at any time after execution of this Agreement A photocopy of this authorization will be deemed as acceptable for release of financial information. 1GC is authorized to update such information and financial profiles from time to time as it deems appropriate.

1.5     **Transactional History.** Merchant authorizes their bank to provide 1GC with Merchant's banking or processing history to determine qualification or continuation in this program.

1.6     **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by 1GC for monies owed to 1GC from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by 1GC.

1.7     **No Liability.** In no event will 1GC be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and Guarantor(s).

1.8     **Reliance on Terms.** Section 1.1, 1.7, 1.8, 1.10, 1.11 and 2.5 of this Agreement are agreed to for the benefit of Merchant, 1GC and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

1.9     **Sale of Receipts.** Merchant and 1GC agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from 1GC to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement which equals the fair market value of such Receipts. 1GC has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to 1GC in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products

and services and the payment by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that 1GC has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and 1GC shall promptly refund to Merchant any interest received by 1GC in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that 1GC not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

1.10    **Power of Attorney.** Merchant irrevocably appoints 1GC as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to 1GC from Merchant, or in the case of a violation by Merchant of this Agreement or the occurrence of an Event of Default under Section 4 hereof by Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause
(ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to 1GC; (v) to file any claims or take any action or institute any proceeding which 1GC may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount; and/or (vi) to contact any Processor of Merchant and to direct such Processor(s) to make payment directly to 1GC of all or any portion of the amounts received by such Processor(s) and to provide any information regarding Merchant requested by 1GC. Each Processor may rely on the previous sentence as written authorization of Merchant to provide any information requested by 1GC and to make payments to 1GC. Each Processor is hereby irrevocably authorized and directed by Merchant to follow any instruction of 1GC regarding payment or transfer of funds, without inquiry as to 1GC's right or authority to give such instructions. Merchant acknowledges the terms of the preceding sentence and agrees not to (i) interfere with 1GC's instructions or a Processor's compliance with this Agreement or (ii) request any modification thereto without 1GC's prior written consent.

1.11    **Protections Against Default.** The following Protections 1 through 9 may be invoked by 1GC, immediately and without notice to Merchant in the event:
(a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the 1GC electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to 1GC; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor, without 1GC's prior written consent; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of 1GC, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to 1GC; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to 1GC at law, in equity or otherwise pursuant to this Agreement.

Protection 1. The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately.

Protection 2. 1GC may enforce the provisions of the Personal Guarantee of Performance against the Guarantor.

Protection 3. Merchant shall, upon execution of this Agreement, deliver to 1GC an executed confession of judgment in favor of 1GC in the amount of the Purchase Amount stated in the Agreement. Upon breach of any provision in this paragraph (Section 1.11), 1GC may enter that confession of judgment as a judgment with the Clerk of the Court and execute thereon.

Protection 4. 1GC may enforce its security interest in the Collateral identified herein.

Protection 5. The entire Purchase Amount shall become immediately refundable to 1GC from Merchant.

Protection 6. 1GC may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which 1GC shall recover judgment against Merchant, Merchant shall be liable for all of 1GC's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

Protection 7. Merchant shall, upon execution of this Agreement, deliver to 1GC an executed assignment of lease of Merchant's premises in favor of 1GC. Upon breach of any provision in this paragraph (Section 1.11), 1GC may exercise its rights under such assignment of lease.

Protection 8. 1GC may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise.

Protection 9. In the event Merchant changes or permits the change of the Processor approved by 1GC or adds an additional Processor, in violation of this paragraph (Section 1.11) above, 1GC shall have the right, without waiving any of its rights and remedies and without notice to Merchant, to notify the new or additional Processor of the sale of the Receipts hereunder and to direct such new or additional Processor to make payment directly to 1GC of all or any portion of the amounts received by such Processor.

1 Global Capital as Servicing Agent        1 GLOBAL CAPITAL, LLC | 08-06-2013
                                              Page 5                            INITIALS 

11795-005/00426621_1

1.12   **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes 1GC to disclose information concerning Merchant's and each Owner's credit standing (including credit bureau reports that 1GC obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner hereby waives to the maximum extent permitted by law any claim for damages against 1GC or any of its affiliates relating to any (i) investigation undertaken by or on behalf of 1GC as permitted by this Agreement or
(ii) Disclosure of information as permitted by this Agreement.

1.13   **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by 1GC, including this Agreement and any other 1GC documentations (collectively, "Confidential Information") are proprietary and confidential information of 1GC. Accordingly unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of 1GC to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.13.

1.14   **Publicity.** Merchant and each Owner only authorizes 1GC to use its, his or her name in a listing of clients and in advertising and marketing materials with their express written consent.

1.15   **D/B/A's.** Merchant hereby acknowledges and agrees that 1GC may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between 1GC and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

1.16   **Debt Settlement Organizations.** Merchant is prohibited from engaging the services of any third-party to restructure, negotiate, consolidate, or settle any debt arising from this Agreement. Engaging such services shall be deemed a default. In addition to standard default fees imposed by this Agreement, 1GC shall impose a penalty equal to 50% of the outstanding balance in the event such third party services are engaged.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that as of this date and during the term of this Agreement:

2.1   **Financial Condition and Financial Information.** Its bank and financial statements, copies of which have been furnished to 1GC, and future statements which will be furnished hereafter at the discretion of 1GC, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise 1GC of any material adverse change in its financial condition, operation or ownership. 1GC may request statements at any time during the performance of this Agreement and the Merchant shall provide them to 1GC within 5 business days. Merchant's failure to do so is a material breach of this Agreement,

2.2   **Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

2.3   **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4   **Electronic Check Processing Agreement.** Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without 1GC's prior written consent. Any such change shall be a material breach of this Agreement.

2.5   **Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and 1GC or change any of its places of business.

2.6   **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

2.7   **Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from 1GC to Merchant, execute, acknowledge and deliver to 1GC and/or to any other person, firm or corporation specified by 1GC, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.8   **No Bankruptcy.** As of the date of this Agreement, Merchant does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing, Protections 2 and 3 are immediately invoked.

2.9   **Working Capital Funding.** Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than 1GC.

2.10   **Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of 1GC.

2.11    **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.12    **Default Under Other Contracts.** Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

### III. EVENTS OF DEFAULT AND REMEDIES

3.1    **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) the sending of notice of termination by Guarantor; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (h) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (i) Merchant shall use multiple depository accounts without the prior written consent of 1GC; (j) Merchant shall change its depositing account without the prior written consent of 1GC; (k) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; or (l) Merchant shall default under any of the terms, covenants and conditions of any other agreement with 1GC or any other agreement between Merchant and 1GC's affiliate, Fast Business Funding, Inc.

3.2    **Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4 hereof, 1GC may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of 1GC in connection with this Agreement may be exercised at any time by 1GC after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3    **Costs.** Merchant shall pay to 1GC all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of 1GC's remedies set forth in Section 3.2 above, including but not limited to court costs and attorneys' fees.

3.4    **Required Notifications.** Merchant is required to give 1GC written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give 1GC seven (7) days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

### IV. MISCELLANEOUS

4.1    **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by 1GC.

4.2    **Assignment.** Merchant is prohibited from transferring or assigning this Agreement, or any of its rights or obligations hereunder, without 1GC's prior written consent, which may with withheld in its sole discretion. The rights and obligations of 1GC under this Agreement may be transferred or assigned either in whole in part at any time to by 1GC without the consent of Merchant, provided that such transferee or assignee takes such transfer or assignment subject to the terms and conditions of this Agreement.

4.3    **Notices.** All notices, requests, consent, demands and other communications hereunder shall be delivered via U.S. mail or electronic mail to the respective parties to this Agreement at the addresses set forth in this Agreement.

4.4    **Waiver Remedies.** No failure on the part of 1GC to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5    **Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of merchant, 1GC and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of 1GC which consent may be withheld in 1GC's sole discretion. 1GC reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if 1GC so elects, be instituted in in the Circuit Court of the 17th Judicial Circuit, in and for Broward County (the "Acceptable Forum"). Merchant agrees that the Acceptable Forums is convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by 1GC to transfer such proceeding to an Acceptable Forum.

4.6  **Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.7  **Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.8  **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereto embody the entire agreement between Merchant and IGC and supersede all prior agreements and understandings relating to the subject matter hereof.

4.9  **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.10  **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW

AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.11  **Facsimile Acceptance.** Facsimile signatures shall be deemed acceptable for all purposes.

SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

**MERCHANT #1 [REQUIRED]**

By  Vladimir Djurkovic , OWNER
    (Print Name and Title)                            (Signature)    < Sign Here
SS # [redacted]          Driver's License Number [redacted]

**MERCHANT #2 [REQUIRED IF CO-OWNERSHIP]**

By _____
    (Print Name and Title)                            (Signature)    < Sign Here
SS # _____  Driver's License Number _____

**OWNER/GUARANTOR #1 [REQUIRED]**

By  Vladimir Djurkovic , OWNER
    (Print Name and Title)                            (Signature)    < Sign Here
SS # [redacted]          Driver's License Number [redacted]

**OWNER/GUARANTOR #2 [REQUIRED IF CO-OWNERSHIP]**

By _____
    (Print Name and Title)                            (Signature)    < Sign Here
SS # _____  Driver's License Number _____

INITIALS

## AUTHORIZED SERVICING AGENT - 1 Global Capital LLC

I understand that 1 Global Capital LLC is the Authorized Servicing Agent of 1 Global Capital, LLC for this contract providing administrative, bookkeeping, reporting and support services for 1 Global Capital, LLC and the Merchant. 1 Global Capital LLC is affiliated or owned by 1 Global Capital, LLC and is acting as independent agent for services including but not limited to background checks, credit checks, general under writing review, filing UCC-I security interests, cash management, account reporting and remit capture. 1 Global Capital LLC may at its sole discretion participate in this facility by providing a small portion of the funds for this transaction directly to 1 Global Capital LLC. 1 Global Capital LLC is not a credit card processor, or in the business of processing credit cards, hereby acknowledges that in no event will 1 Global Capital LLC be liable for any claims made against 1 Global Capital, LLC or the Processor under any legal theory for lost profits, lost revenues, lost business opportunity, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by the Merchant and Owner/Guarantor. As such, Merchant hereby authorizes 1 Global Capital LLC as the appointed Merchant Agreement servicing agent for 1 Global Capital, LLC to initiate ACH Debits (Withdrawals) from the Merchant bank account indicated within this Merchant Agreement for the payment of the Purchase Price as disclosed herein as it becomes due and payable under the terms of the Merchant Agreement. Furthermore, Merchant represents and warrants that it is the owner of the bank account provided herein or has the full authority to grant this authorization. If there are any questions in regard to an electronic debit (withdrawal) from this account, you may contact us at 1-888-374-3150 between the hours of 9am and 7pm (EST) Monday through Friday.

**MERCHANT**

By _Vladimir Djurkovic , OWNER_  
    Print Name and Title          Signature



## ACH Authorization/Bank Authorization Form
All information on this form is required unless otherwise noted.

### Business Authorized to Debit/Credit Account

1st Global Capital
Authorized Business Name

(305) 224 - 1490
Authorized Business Phone Number

1250 E hallandale Beach Blvd, Suite 409
Authorized Business Address

Hallandale Beach | Florida | 33009
City | ST | Zip

### Account Holder Information

Jetset Express, Inc
Account Holder Business Name

(312) 767 - 9967
Account Holder Phone Number

3577 North Milwaukee Ave, Apt 2
Account Holder Business Address

Chicago | Illinois | 60641
City | ST | Zip

PNC Bank
Bank Name

Branch Phone number

Bank Routing Number

Account Number

NSF in current month: _____

Current/Ending Balance: _____

Age of the Account: _____

Overdraft Protection:  ☐ Yes  ☐ No

Branch Manager Name: _____  Signature: _____

### Authorization

I, Vladimir Djurkovic_____, authorize 1st Global Capital, LLC to electronically draft via the Automated Clearing House system the amount of $ 489.29 _____, daily until the purchase is completed and the UCC lien is released. The Undersigned hereby certifies that they are duly authorized to execute this form on behalf of the above listed account holder. I acknowledge that I am subject to a $75 NSF fee if items are returned for insufficient funds

Signature of Account Holder | Vladimir Djurkovic, OWNER | 05/25/2018
 | Name/Title of Account Holder | Date



1250 E. Hallandale Beach Blvd., Suite #409
Hallandale Beach, Florida 33009
Toll Free: 888.374.3150

## Terms of Use for Text Message (SMS)

1. Your wireless carrier's standard messaging rates apply to SMS correspondence. 1st Global Capital, LLC does not charge for any content; however, downloadable content may incur additional charges from your wireless carrier. Please contact your wireless carrier for information about your messaging plan. Your carrier may impose message or charge limitations on your account that are outside of our control. All charges are billed by and payable to your wireless carrier. Merchants Initials

2. You represent that you are the owner, or authorized user of the wireless device you use to receive the service, and that you are authorized to approve the applicable charges. Merchants Initials

3. We will send you messages periodically and only with your explicit agreement as indicated by your continuation of the process flow. Merchants Initials

4. We will not be liable for any delays or failures in your receipt of any SMS messages as delivery is subject to effective transmission from your network operator and processing by your mobile device. SMS message services are provided on an AS IS, AS AVAILABLE basis. Merchants Initials

5. Data obtained from you in connection with this SMS service may include your mobile phone number, your carrier's name, and the date, time and content of your messages and other information that you may provide. We may use this information to contact you and to provide the services you request from us, discuss your advance, current and past due payments and to otherwise operate, develop and improve the service. Your wireless carrier and other service providers may also collect data from your SMS usage, and their practices are governed by their own policies. We will only use the information you provide to the service to transmit your text message or as otherwise described in this document. Nonetheless, we reserve the right at all times to disclose any information as necessary to satisfy any law, regulation or governmental request, to avoid liability, or to protect our rights or property. When you complete forms online or otherwise provide us information in connection with the service, you agree to provide accurate, complete, and true information. Merchants Initials

6. The service as well as the content and materials received through the service are proprietary to us and our licensors, and is for your personal and commercial use only. You shall not damage, impair, interfere with or disrupt the service or its functionality. Merchants Initials

7. We reserve the right to alter charges and/or these terms and conditions from time to time. We may suspend or terminate the service to you if we believe you are in breach of our terms and conditions. Your service is also subject to termination in the event your wireless service terminates or lapses. We may discontinue the service at any time. Merchants Initials

8. Additionally, you agree that we may send any SMS Statement Notifications through your communication service provider in order to deliver them to you. You agree to provide a valid mobile phone number for these services. You further agree to indemnify, defend and hold us harmless from and against any and all claims, losses, liability, cost and expenses (including reasonable attorneys' fee) arising from your provision of a mobile phone number that is not your own or your violation of applicable federal, state or local law, regulation or ordinance. Your obligation under this paragraph shall survive termination of the Agreement. SMS Statement Notification is provided for your convenience only. Merchants Initials

9. If you have any questions, e-mail 1st Global Capital at support@1stglobalcapital.com.
We do not charge for help or info messages; however, your normal carrier rates apply. Merchants Initials

www.1stglobalcapital.com
1250 E. Hallandale Beach Blvd., Suite #409, Hallandale Beach, Florida 33009 | Toll Free: 888.374.3150
www.1stglobalcapital.com



1250 E. Hallandale Beach Blvd., Suite #409
Hallandale Beach, Florida 33009
Toll Free: 888.374.3150

## ADDENDUM TO CONTRACT

## NO STACKING

This addendum is to certify that I ___Vladimir Djurkovic___ of [ Jetset Express, Inc ] agree and understand that while an outstanding balance with 1st Global Capital LLC exists; I am prohibited from initiating a Cash Advance or Loan Product Advance with another Merchant Cash Advance company other than 1st Global Capital LLC. Doing so would place me in breach of contract and ___Vladimir Djurkovic___ [ Jetset Express, Inc ] will be liable for the entire amount owed to 1st Global Capital LLC immediately plus attorneys' fees, costs, and liquidated damages. Liquidated damages is equal to $2,500.00 or 20% of the outstanding balance whichever is greater.

**Amounts received from any subsequent merchant cash advances will be subject to collections by 1st Global Capital to satisfy the outstanding account balance.**

By their signatures below the parties agreed to be bound by this addendum.

| Name: Vladimir Djurkovic | Name: |
|---|---|
| Signature: [signed] | Signature: |

NO STACKING ADDENDUM



**APPENDIX A: THE FEE STRUCTURE**

<u>One Time Fees (deducted from origination amount)</u>

Underwriting Fee: 2% of origination amount

<u>Right of Offset</u>

1. Notwithstanding any other provision of the Merchant Agreement, 1st Global Capital (1GC) shall have the right to offset any amounts paid in excess of the terms of this Agreement against amounts that may be due under future agreements with 1G, including renewal agreements.

<u>Other Fees</u>

1. NSF / Returned Fee: $75.00 each
   - This is a default of the Merchant Agreement.

2. Blocked or Rejected ACH Fee: $100.00
   - Fee is applied when the Merchant directs its banking institution to reject, block, or stop 1GC's ACH Collection Protocol. This is a default of the Merchant Agreement.

3. Bank Change Fee: $50.00
   - Fee is applied when the Merchant requires or directs a change of account(s) to be debited requiring 1GC to reconfigure ACH Collection Protocol.

4. Default Fee: $2,500.00
   - Fee is applied to any breach of the merchant agreement including but not limited to modified payment arrangements (extension fees may also apply).

5. ACH Fee: $15.00
   - Next day funding

6. UCC Release Fee: $100.00

7. Extension Fee:
   - Merchant may request a payment extension not to exceed 10 days. An extension fee equal to 60% of the Daily Specified Amount shall be assessed for each day of nonpayment. 1G reserves the right to deny Merchant's request to extend payments.

8. De-conversion Fee
   - Merchant agrees to pay the greater of: (a) one-half of the daily receivable rate multiplied by the number of remaining days of the subject agreement or (b) $5,000, whichever is greater.

9. Debt Settlement Organizations
   - Merchant is prohibited from engaging the services of any third-party to restructure, negotiate, consolidate, or settle any debt arising from this Agreement. Engaging such services shall be deemed a default. In addition to standard default fees imposed by this Agreement, 1GC shall impose a penalty equal to 50% of the outstanding balance in the event such third party services are engaged.

10. Bank Risk Fee: $2.00 for ACH attempts

Merchant's Signature _____



**1st GLOBAL CAPITAL**
FINANCIAL SERVICES

## PAYOFF REQUEST AND AUTHORIZATION

**DATE:** 05/25/201

**TO:** No

**FROM:** No

**RE:** Account Number _____

Customer Name: _____

I Vladimir Djurkovic _____, authorize the release of my payoff information to the party indicated below.

1 Global Capital, LLC
c/o Underwriting Dept.
1250 East Hallandale Beach Blvd., Suite 409
Hallandale Beach, Florida 33009
Telephone: 1-888-374-3150
e-mail: _____
Fax: _____

This authorization includes any staff employed by 1 Global Capital, LLC. A facsimile or other electronic transmission of this document shall have the same force and effect as if it were an original.

This authorization includes communicating and negotiating a payoff, releases of lien, and/or any and all matters concerning the above account.

Very truly yours,

_[signature]_

Merchant